Entered on Docket August 31, 2020

**Below is a Memorandum Decision of the Court.**



**Brian D. Lynch
U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | |
| ROBERT W. VETSCH, | Case No. 19-42283-BDL |
| Debtor. | |
| KATHRYN A. ELLIS, Chapter 7 Trustee for the Bankruptcy Estate of Robert W. Vetsch, | Adversary No. 20-04032-BDL |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| ROBERT W. VETSCH; LARRY BONWELL as trustee of the Bonwell Family Trust, | |
| Defendants. | |

Plaintiff Kathryn A. Ellis ("Trustee") filed a Motion for Summary Judgment (ECF No. 8) (the "Motion") along with a supporting declaration (ECF No. 9) in this adversary seeking a determination that the interest of Robert W. Vetsch ("Debtor") as a primary beneficiary of the Survivor's Trust A created by the Bonwell Family Trust is property of the bankruptcy estate as either a contingent prepetition interest or as property Debtor became entitled to within 180 days

MEMORANDUM DECISION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 1

of the petition date. Defendants filed their Motion for Summary Judgment (ECF No. 10) (the "Cross-Motion"). Defendants filed their response to Plaintiff's Motion on August 5, 2020 (ECF No. 12). Plaintiff then filed her response to Defendants' Cross-Motion that same day (ECF No. 13). On August 7, 2020, Plaintiff filed a reply in support of her Motion (ECF No. 14).

The Court held a telephonic hearing and heard arguments from counsel on August 12, 2020 and took the matter under advisement.

## I. Factual Background

The parties stipulated to the material facts. On September 30, 2009, Debtor's parents, Robert and Sharon Bonwell, created the Bonwell Family Trust (the "Bonwell Trust") and executed mirror wills devising the "rest, residue, and remainder" of their estates to the same (ECF No. 9, Exs. A & B). Both wills are valid under Washington law. Under the terms of the trust, the Bonwells held revocable interests in the trust as co-trustees until one of them died (ECF No. 9, Ex. A, Bonwell Trust Art. 4.1). On the death of either Mr. or Ms. Bonwell, a new "Survivor's Trust A" is created, which is held and administered by the surviving trustor (ECF No. 9, Ex. A, Bonwell Trust Art. 6.1). The surviving trustor continues to have the right "[t]o revoke, modify or amend in whole or in part" the trust instrument (ECF No. 9, Ex. A, Bonwell Trust Art. 4.2, 4.1.B).

Upon the death of the surviving trustor, the successor trustee must divide the trust assets into separate, equal shares to the five primary beneficiaries and distribute them (ECF No. 9, Ex. A, Bonwell Trust Art. 9.2). Debtor is listed as a primary beneficiary entitled to receive his "share outright as soon as practical" (ECF No. 9, Ex. A, Bonwell Trust Art. 9.1, 9.4.A).

Debtor's father passed away before Debtor filed his bankruptcy petition. Ms. Bonwell became the surviving trustor, and Survivor's Trust A was created. Debtor filed his chapter 7 petition on July 12, 2019. On the petition date, the Bonwell Trust maintained property worth approximately $190,000. Debtor has no other significant assets potentially subject to the

Trustee's administration. Sixty-nine days later, Ms. Bonwell passed away. Her death did not cause any additional property to be added to the Bonwell Trust. Debtor later amended his schedules to disclose his interest as a primary beneficiary in the Bonwell Trust.

The parties' dispute centers upon the interpretation of the Bonwell Trust provisions below (ECF No. 9, Ex. A).

> 7.5 <u>Termination</u>. Upon the death of surviving Trustor, this trust shall terminate and all property remaining after payment of the amounts described in Paragraph 12.8 shall be administered by the Trustee as provided in Article 11.
>
> 9.8 <u>Period of Administration</u>. Upon the death of the Surviving Trustor, the Trustee shall have a reasonably feasible period of time in which to administer the Trust in accordance with its terms, prior to distribution of the Trust Estate under this Article 9; to inventory the assets of the Trust, including the collection of any life insurance proceeds payable to the Trustee as beneficiary; to pay all debts and obligations charged by law against the Trust, including death taxes, in accordance with Paragraph 10.8; and to divide the remaining Trust Estate into separate trust shares to be held for or distributed to the beneficiaries as provided hereunder in this Article 9.
>
> 11.8 <u>Spendthrift Provision</u>. The interest of any beneficiary in the principal or income of any trust arising after the death of the surviving Trustor shall not be subject to the claims of his or her creditors, or others, or liable to seizure, execution, attachment, garnishment, or other process of law, and no such beneficiary shall have any right to encumber, hypothecate, or alienate his or her interest in such trust in any manner. This provision shall not limit the exercise of any power of appointment or the right to disclaim.

## II. Conclusions of Law

**A. Jurisdiction and Summary Judgment Standard.**

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. Venue is proper in this District. 28 U.S.C. § 1409(a). This matter is a core proceeding under 11 U.S.C. § 157(b)(2)(A), (B), and (E).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Bankruptcy Procedure 7056 (incorporating Federal Rule of Civil Procedure 56(a)). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where, as here, there are cross-motions for summary judgment, "each movant has the burden of presenting evidence to support its motion that would allow the [court], if appropriate, to direct a verdict in its favor." *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990) (quoting *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988)). The court must evaluate each motion separately and give the nonmovant in each instance the benefit of all reasonable inferences. *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). Even when both parties assert there are no issues of material fact in their cross-motions for summary judgment, the court is still responsible for determining whether disputed issues of material fact are present. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

Here, not just the material facts but all relevant facts are undisputed, and the issue presented is purely a matter of law. The Court concludes this matter is appropriate for summary judgment.

**B. Debtor's Contingent Prepetition Interest in the Assets of Survivor's Trust A Was Not Property of the Estate as of the Petition Date.**

Whether an interest is property of the estate is determined by examining the nature of the interest on the date the debtor filed the bankruptcy petition. *In re Schmitt*, 215 B.R. 417, 421 (B.A.P. 9th Cir. 1997). Although federal law determines whether a debtor's interest is property of the estate, state law determines the existence and scope of a debtor's property interest. *Butner v. United States*, 440 U.S. 48, 54–55 (1979); *In re Cohen*, 300 F.3d 1097, 1104 (9th Cir. 2002); *In re Pettit*, 217 F.3d 1072, 1078 (9th Cir. 2000).

As a preliminary matter, Survivor's Trust A is an inter vivos trust rather than a testamentary trust under Washington law. *See In re Estate of Collister*, 195 Wash. App. 371, 380–81 (2016) (citing *Edwards v. Edwards*, 1 Wash. App. 67, 72 (1969)) (listing the elements of a testamentary trust, which include a will evidencing testamentary intent to **create** a trust). The Trustee argues that the inter vivos trust became testamentary in nature upon Ms. Bonwell's death. An inter vivos trust is considered nontestamentary even though its terms may provide for the transfer of the trust's assets to its beneficiaries upon the last trustor's death. *In re Cook*, Adv. No. SA-07-01143-ES, 2008 WL 8444785, at *4 (B.A.P. 9th Cir. Nov. 3, 2008) (citing Restatement (Second) of Trusts § 57 (Am. Law Inst. 1959)); *see In re Estate of Furst*, 113 Wash. App. 839, 840–844 (2002) (describing a trust as a "revocable living trust" where the trustor is the trustee and beneficiary during his lifetime and other beneficiaries are later entitled to receive distributive shares of trust assets upon the death of the trustor). Here, the nature of the trust as inter vivos did not change because the trust went into effect immediately on the date it was created by the Bonwell Trust as opposed to the date of Ms. Bonwell's death. The issue is whether a contingent interest in an inter vivos trust is a property interest under Washington law. *Schmitt*, 215 B.R. at 421.

**Below is a Memorandum Decision of the Court.**

The Trustee argues that Debtor's contingent prepetition interest in the assets of Survivor's Trust A was property of the estate as of the petition date even though the interest did not mature until the death of the surviving trustor. This argument would moot the question whether Debtor's interest became property of the estate under 11 U.S.C. § 541(a)(5)(A) because his contingent interest would already be property of the estate as of the petition date. The Trustee relies on *Hernandez v. Hopper (In re Hernandez)*, No. 12-24502, 2013 WL 1490995 (B.A.P. 9th Cir. Apr. 11, 2013), *Husted v. Mepco Label Systems (In re Gassner)*, Adv. Proc. No. 19-2006, 2020 WL 408881, at *14 (Bankr. E.D. Cal. Jan. 22, 2020), and *Mullen v. Jones (In re Jones)*, 487 B.R. 224, 226 (Bankr. D. Ariz. 2012), *aff'd*, BAP No. AZ-12-1644, 2014 WL 465631 (B.A.P. 9th Cir. Feb. 5, 2014), all of which rely on *Neuton v. Danning (In re Neuton)*, 922 F.2d 1379 (9th Cir. 1990). But *Hernandez*, *Gassner*, and *Neuton* involved **irrevocable** inter vivos trusts, whereas Survivor's Trust A was revocable on the petition date. *Hernandez*, *supra*, at *1; *Gassner*, *supra*, at *1; *Schmitt*, 215 B.R. at 421 (noting that *Neuton* involved an irrevocable inter vivos trust); *see also Zimmermann v. Spencer (In re Spencer)*, 306 B.R. 328, 332 n. 6 (Bankr. C.D. Cal. 2004) ("[T]he Court finds the *Schmitt* distinction between revocable and irrevocable trusts an important consideration in determining that a beneficial contingent interest does not exist on the date of the petition."). The *Jones* case involved a "beneficiary deed" that transferred title to the debtor effective on the death of the grantor. *Jones*, 487 B.R. at 226. The Court found that it was a "devise" under Arizona law, and though not explicitly recognizing the irrevocable nature of the deed, cited *Neuton* in holding that the debtor was vested in the contingent interest at the time of filing. *Id.* at 229–30. Given the unique nature of the document, recognized by Arizona law, it is not apposite to the extant case.

No Ninth Circuit authority has held that a contingent prepetition interest in a **revocable** inter vivos trust constitutes property of the estate. *Schmitt*, 215 B.R. at 421. The cases more apposite to the case before this Court are *Schmitt*, 215 B.R. at 422, which held an interest in a

MEMORANDUM DECISION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 6

revocable inter vivos trust was not a property right under either Oregon or California law because the trust was revocable on the petition date; and *Cook*, *supra*, at *5, which held a contingent interest in a revocable inter vivos trust was not property of the estate after analyzing California law. No Washington case or statute is on point.[1] This Court concludes that a Washington court would follow the reasoning of other courts and hold that a contingent interest in a revocable trust is not an enforceable property right because it was subject to complete divestment by the trustor during her lifetime on the petition date.

In this case, Debtor's interest in the trust prior to the death of his mother was contingent upon his mother passing away without having revoked the part of the Bonwell Trust that listed him as a primary beneficiary. On the petition date, Debtor's mother was alive, and his interest remained subject to complete divestment by Ms. Bonwell. Debtor's interest did not vest until the time of his mother's death. The Court concludes Debtor's contingent interest in Survivor's Trust A at the time of his bankruptcy filing was not property of the estate under 11 U.S.C. § 541(a)(1).

**C. Debtor's Interest Was Not Acquired by Bequest, Devise, or Inheritance Under 11 U.S.C. § 541(a)(5)(A).**

The Trustee argues in the alternative that the right to a distribution of a one-fifth share of the trust assets, which accrued when Ms. Bonwell died during the 180-day period postpetition, is property of the estate because Debtor acquired that interest by bequest, devise, or inheritance.

---

[1] A Connecticut bankruptcy court cited *In re Button's Estate*, 4 Wash. App. 773, 775 (1971), *rev'd in part,* 79 Wash. 2d 849 (1971), for the proposition that under Washington law, a contingent interest in a revocable inter vivos trust is "a vested remainder subject to complete defeasance." *In re Crandall*, 173 B.R. 836, 839 (Bankr. D. Conn. 1994). The *Button's Estate* case involved whether a Washington anti-lapse statute applied to gifts in trust. The Washington Court of Appeals held that the gift to the beneficiary of a trust who had predeceased the trustor, had nonetheless "vested," which is the holding the *Crandall* court cites. However, the Washington Supreme Court refused to examine the propriety of the conclusion that such an interest was vested because the Court of Appeals did not address whether the predeceasing beneficiary's interest was intended to pass to her heirs upon her death. *In re Button's Estate*, 79 Wash. 2d at 855. For that reason, as well as the different facts and legal issue, this Court concludes that there is no Washington case on point.

MEMORANDUM DECISION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 7

The test is whether Debtor's right to a distribution under the trust on the death of the surviving trustor is a "bequest, devise, or inheritance" under Washington law. *Magill v. Newman (Matter of Newman)*, 903 F.2d 1150, 1153 (7th Cir. 1990). The nature of the trust at issue determines whether postpetition trust distributions to a debtor-beneficiary qualify for inclusion in the bankruptcy estate. *In re Schauer*, 246 B.R. 384, 387 (Bankr. D.N.D. 2000). Neither party disputes that postpetition distributions from a testamentary trust would be acquired by bequest or devise; instead, they dispute whether the trust is testamentary or not.

While the Trustee argues that this is a testamentary trust with respect to Debtor's interest rather than an inter vivos one, Washington law holds that a testamentary trust must be created by will. *Collister*, 195 Wash. App. at 380–81 (citing *Edwards*, 1 Wash. App. at 72). "Where an interest in the trust property is created in a beneficiary other than the [trustor], the disposition is not testamentary merely because the interest of the beneficiary does not take effect before the death of the [trustor] or because the [trustor] reserves the power to revoke or modify the trust." *Cook*, *supra*, at *4 (quoting Restatement (Second) of Trusts § 57 (Am. Law Inst. 1959) and citing *Spencer*, 306 B.R. at 334) (internal quotations omitted). *Cook* went on to hold that when the debtor's mother died, the debtor had a right to a share of the distribution of the trust property, but this right was "acquired through vesting of his interest in the Trust, not through bequest, devise, or inheritance, and is, therefore, not included in the estate." *Cook*, *supra*, at *5. The Court has already held that Survivor's Trust A is a revocable inter vivos trust. The issue then is whether Washington law holds that an interest in or a distribution from a revocable inter vivos trust is a bequest, devise, or inheritance.

Neither the Bankruptcy Code nor Washington law defines the terms "bequest," "devise," or "inheritance." The Court believes Washington would define those terms using the traditional meanings as set forth in Black's Law Dictionary. *See In re Roth*, 289 B.R. 161, 166 (Bankr. D. Kan. 2003) (using definitions from Black's Law Dictionary where Kansas law was silent on the

meaning of those terms). Black's Law Dictionary provides the following definitions of those terms: a bequest is a gift by will of personal property; a devise is a testamentary disposition of land or realty; and an inheritance is property that descends to an heir on the intestate death of another. Black's Law Dictionary (11th ed. 2019). Other jurisdictions interpreting those terms have held that distributions from revocable inter vivos trusts are not bequests, devises, or inheritances. *See, e.g., Cook*, *supra*, at *5; *Spencer*, 306 B.R. at 336; *Roth*, 289 B.R. at 167; *In re Crandall*, 173 B.R. 836, 839 (Bankr. D. Conn. 1994) (narrowly construing "bequest, devise, or inheritance" to exclude all will substitutes).

The Court concludes that Debtor's interest in Survivor's Trust A was not acquired by bequest, devise, or inheritance. Therefore, 11 U.S.C. § 541(a)(5)(A) does not operate to bring that property into the bankruptcy estate. This holding is consistent with the majority of courts that have reached this issue. *See Roth*, 289 B.R. at 167; *see also In re Ciano*, 433 B.R. 431, 436 (Bankr. N.D. Fla. 2010) (collecting cases holding a debtor's interest in any inter vivos trust is not within the reach of 11 U.S.C. § 541(a)(5)(A)).

**D. The Spendthrift Provision Applies to Debtor's Distribution Upon the Death of Ms. Bonwell Under 11 U.S.C. § 541(c)(2) and Prevents His Interest from Becoming Property of the Estate.**

Even if Debtor's contingent interest in the assets of Survivor's Trust A were brought into the bankruptcy estate by 11 U.S.C. § 541(a)(1) or § 541(a)(5)(A), his interest is excluded under 11 U.S.C. § 541(c)(2) due to the spendthrift provision in the Bonwell Trust. The parties do not dispute that spendthrift provisions are valid and enforceable under Washington law. *Milner v. Outcalt*, 36 Wash. 2d 720, 721–22 (1950) (citing 1 Scott on Trusts 742, § 151) (spendthrift provisions are valid and enforceable under Washington law). They do dispute whether the spendthrift provision in the Bonwell Trust at Article 11.8 applies to the transfer of the trust assets to Debtor upon the death of the surviving trustor. The Trustee argues that the spendthrift

provision does not apply to the distribution from Survivor's Trust A upon Ms. Bonwell's death because that trust terminated upon her death. Instead, according to the Trustee, Debtor is receiving a post-death gift of the "trust res." The Trustee then argues that the spendthrift provision does not apply because Debtor's right to a share of the trust res is an accrued trust distribution as of the death of Ms. Bonwell, citing *In re Finley*, 286 B.R. 163, 166 (Bankr. W.D. Wash. 2002), which interprets *Knettle v. Knettle*, 197 Wash. 225, 227–28 (1938).

There are two problems with this argument. First, the applicability of the spendthrift provision is determined as of the petition date, and, even accepting the Trustee's argument that the Survivor's Trust A terminated upon Ms. Bonwell's death, the spendthrift provision was valid and enforceable on the petition date. *See Spencer*, at 332 (holding that the spendthrift provision was valid and enforceable on the petition date as the last trustor was still alive then, even assuming the spendthrift provision became unenforceable upon the postpetition death of the last trustor). Second, the trust in *Knettle* provided that net income of the trust would be distributed annually not later than March 1. *Knettle*, 197 Wash. at 229. The trustee drew a check on February 19, 1937 but had not delivered it to the beneficiary. *Id.* The court held: "[W]e think his right vested in his share of the income when the amount was ascertained, ready for distribution and the accounting made." *Id.* at 230. Survivor's Trust A does not instantaneously terminate. The Trustee is given a "reasonably feasible period of time in which to administer the Trust in accordance with its terms, prior to the distribution of the Trust Estate under this Article 9" after the death of the Surviving Trustor (Bonwell Trust Art. 9.8). Article 9.8 lays out a number of tasks the Trustee must perform before dividing the Trust estate into separate shares. Debtor's right to a share is subject to various deductions, including paying all debts and obligations of the Trust and specifically the balance of any death taxes attributable to Ms. Bonwell's death, which the successor trustee may pay out of Survivor's Trust A. At the petition date and even at the date of Ms. Bonwell's death, the amount of distribution to Debtor from the trust had not been

ascertained, was not ready for distribution, and no accounting had been made of what Debtor's interest would be.

Furthermore, the spendthrift provision in the Bonwell Trust specifically applies to Debtor's interest. The spendthrift provision states at Article 11.8:

> The interest of any beneficiary in the principal or income of any trust **arising after** the death of the surviving Trustor shall not be subject to the claims of his or her creditors, or others, or liable to seizure, execution, attachment, garnishment, or other process of law . . . .

(Emphasis added). The Trustee argues that the spendthrift provision only applies to "the trust shares created under Articles 9.2, 9.4 and 9.5 for minor children or disabled Primary Beneficiaries." Motion, at 14, l. 14–15. This follows on the Trustee's argument that the Survivor's Trust A terminated upon Ms. Bonwell's postpetition death, and Debtor's share from the Trust was therefore not protected. Tucked into this argument is the suggestion that the language of the spendthrift trust provision only applies to a "trust arising after the death of the surviving trustor," an interpretation that would have very limited, if any, applicability. The Court reads the "arising after" language as modifying all of the preceding portion of the sentence: "[T]he interest of any beneficiary in the principal or income of any trust arising after . . . ." Absent a modification of the trust document, the only beneficiaries of the Bonwell Trust were the two trustors until they died. The Court interprets the provision as protecting the interest of "any beneficiary" when it arose, i.e., after the death of the surviving trustor. Under Washington law, the trustors' intent and purpose are derived from the terms of the trust instrument, construing all provisions together. *Waits v. Hamlin*, 55 Wash. App. 193, 199 (1989) (citing *Old Nat'l Bank v. Campbell*, 1 Wash. App. 773, 777 (1970), *review denied*, 78 Wash. 2d 992 (1970)).

For the foregoing reasons, the Court holds in the alternative that the spendthrift provision is valid and enforceable under Washington law with respect to Debtor's interest in Survivor's

MEMORANDUM DECISION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 11

**Below is a Memorandum Decision of the Court.**

Trust A. Regardless of the merits of the Trustee's other arguments, under the terms of Article 11.8 of the Trust, Debtor's beneficial interest is not property of the bankruptcy estate under 11 U.S.C. § 541(c)(2) and cannot be administered by the Trustee.

### III. Conclusion

The Court finds that there are no genuine issues of material fact, and Defendants are entitled to summary judgment as a matter of law. The Court holds that Debtor's contingent interest in the revocable inter vivos trust as of the petition date was not property of the estate, nor did it become so when Ms. Bonwell died within 180 days of the petition date.

Accordingly, the Defendants' Cross-Motion is GRANTED; Plaintiff's Motion is DENIED. The Court will enter a separate judgment, pursuant to Federal Rule of Bankruptcy Procedure 7058 and Federal Rule of Civil Procedure 58, consistent with this ruling.

/// END OF MEMORANDUM DECISION ///